# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

* * *

THERESE C. BORJA,

          Plaintiff,

v.

ANDREW SAUL, Acting Commissioner of
Social Security Administration,

          Defendant.

Case No. 2:20-cv-00670-BNW

**ORDER**

This case involves review of an administrative action by the Commissioner of Social Security denying Plaintiff Therese C. Borja's application for disability insurance benefits under Title II of the Social Security Act. The Court reviewed Plaintiff's Motion for Reversal and/or Remand (ECF No. 24), filed December 31, 2020, and the Commissioner's Countermotion to Affirm the Agency Decision and Response to Plaintiff's Motion for Reversal and/or Remand (ECF Nos. 27, 28), filed February 15, 2021. Plaintiff filed a reply on March 8, 2021. ECF No. 29.

The parties consented to the case being heard by a magistrate judge in accordance with 28 U.S.C. § 636(c) on April 10, 2020. ECF No. 3. This matter was then assigned to the undersigned magistrate judge for an order under 28 U.S.C. § 636(c). *Id.*

## I.    BACKGROUND

### 1.    Procedural History

On September 15, 2015, Plaintiff applied for disability insurance benefits under Title II of the Act, alleging an onset date of May 8, 2013. ECF No. 19-1[1] at 404–05. Her claim was denied initially and on reconsideration. *Id.* at 330–33; 335–40. A hearing was held before an

---

[1] ECF No. 19 refers to the Administrative Record in this matter which, due to COVID-19, was electronically filed. (Notice of Electronic Filing (ECF No. 19).) All citations to the Administrative Record will use the CM/ECF page numbers.

Administrative Law Judge ("ALJ") on August 6, 2018. *Id*. at 260–83. On January 16, 2019, the ALJ issued a decision finding that Plaintiff was not disabled. *Id*. at 19–34. The ALJ's decision became the Commissioner's final decision when the Appeals Council denied review on February 10, 2020. *Id*. at 7–13. Plaintiff, on April 10, 2020, timely commenced this action for judicial review under 42 U.S.C. § 405(g). (*See* IFP App. (ECF No. 1).)

## II.    DISCUSSION

### 1.    Standard of Review

Administrative decisions in social security disability benefits cases are reviewed under 42 U.S.C. § 405(g). *See Akopyan v. Barnhart*, 296 F.3d 852, 854 (9th Cir. 2002). Section 405(g) provides that "[a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which [s]he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action . . . brought in the district court of the United States for the judicial district in which the plaintiff resides." The court may enter "upon the pleadings and transcripts of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

The Commissioner's findings of fact are conclusive if supported by substantial evidence. *See id*.; *Ukolov v. Barnhart*, 420 F.3d 1002 (9th Cir. 2005). However, the Commissioner's findings may be set aside if they are based on legal error or not supported by substantial evidence. *See Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006); *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). The Ninth Circuit defines substantial evidence as "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995); *see also Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). In determining whether the Commissioner's findings are supported by substantial evidence, the court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *see also Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996).

Under the substantial evidence test, findings must be upheld if supported by inferences reasonably drawn from the record. *Batson v. Commissioner*, 359 F.3d 1190, 1193 (9th Cir. 2004). When the evidence will support more than one rational interpretation, the court must defer to the Commissioner's interpretation. *See Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005); *Flaten v. Sec'y of Health and Human Serv.*, 44 F.3d 1453, 1457 (9th Cir. 1995). Consequently, the issue before the court is not whether the Commissioner could reasonably have reached a different conclusion, but whether the final decision is supported by substantial evidence. It is incumbent on the ALJ to make specific findings so that the court does not speculate as to the basis of the findings when determining if the Commissioner's decision is supported by substantial evidence. Mere cursory findings of fact without explicit statements as to what portions of the evidence were accepted or rejected are not sufficient. *Lewin v. Schweiker*, 654 F.2d 631, 634 (9th Cir. 1981). The ALJ's findings "should be as comprehensive and analytical as feasible, and where appropriate, should include a statement of subordinate factual foundations on which the ultimate factual conclusions are based." *Id.*

## 2. Disability Evaluation Process

The individual seeking disability benefits has the initial burden of proving disability. *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir. 1995). To meet this burden, the individual must demonstrate the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). More specifically, the individual must provide "specific medical evidence" in support of her claim for disability. 20 C.F.R. § 404.1514. If the individual establishes an inability to perform her prior work, then the burden shifts to the Commissioner to show that the individual can perform other substantial gainful work that exists in the national economy. *Reddick*, 157 F.3d at 721.

The ALJ follows a five-step sequential evaluation process in determining whether an individual is disabled. *See* 20 C.F.R. § 404.1520; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). If at any step the ALJ determines that she can make a finding of disability or non-disability, a determination will be made, and no further evaluation is required. *See* 20 C.F.R.

§ 404.1520(a)(4); *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003). Step one requires the ALJ to determine whether the individual is engaged in substantial gainful activity ("SGA"). 20 C.F.R. § 404.1520(b). SGA is defined as work activity that is both substantial and gainful; it involves doing significant physical or mental activities usually for pay or profit. *Id.* § 404.1572(a)–(b). If the individual is engaged in SGA, then a finding of not disabled is made. If the individual is not engaged in SGA, then the analysis proceeds to step two.

Step two addresses whether the individual has a medically determinable impairment that is severe or a combination of impairments that significantly limits her from performing basic work activities. *Id.* § 404.1520(c). An impairment or combination of impairments is not severe when medical and other evidence establishes only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on the individual's ability to work. *Id.* § 404.1521; *see also* Social Security Rulings ("SSRs") 85-28, 96-3p, and 96-4p.[2] If the individual does not have a severe medically determinable impairment or combination of impairments, then a finding of not disabled is made. If the individual has a severe medically determinable impairment or combination of impairments, then the analysis proceeds to step three.

Step three requires the ALJ to determine whether the individual's impairments or combination of impairments meets or medically equals the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526. If the individual's impairment or combination of impairments meets or equals the criteria of a listing and the duration requirement (20 C.F.R. § 404.1509), then a finding of disabled is made. 20 C.F.R. § 404.1520(h). If the individual's impairment or combination of impairments does not meet or equal the criteria of a listing or meet the duration requirement, then the analysis proceeds to step four.

---

[2] SSRs constitute the SSA's official interpretation of the statute and regulations. *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1224 (9th Cir. 2009); *see also* 20 C.F.R. § 402.35(b)(1). They are "entitled to 'some deference' as long as they are consistent with the Social Security Act and regulations." *Bray*, 554 F.3d at 1224 (citations omitted) (finding that the ALJ erred in disregarding SSR 82-41).

But before moving to step four, the ALJ must first determine the individual's residual functional capacity ("RFC"), which is a function-by-function assessment of the individual's ability to do physical and mental work-related activities on a sustained basis despite limitations from impairments. *See* 20 C.F.R. § 404.1520(e); *see also* SSR 96-8p. In making this finding, the ALJ must consider all the relevant evidence, such as all symptoms and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence. 20 C.F.R. § 404.1529; *see also* SSRs 96-4p and 96-7p. To the extent that statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the ALJ must make a finding on the credibility of the individual's statements based on a consideration of the entire case record. The ALJ must also consider opinion evidence in accordance with the requirements of 20 C.F.R. § 404.1527 and SSRs 96-2p, 96-5p, 96-6p, and 06-3p.

Step four requires the ALJ to determine whether the individual has the RFC to perform her past relevant work ("PRW"). 20 C.F.R. § 404.1520(f). PRW means work performed either as the individual actually performed it or as it is generally performed in the national economy within the last 15 years or 15 years before the date that disability must be established. In addition, the work must have lasted long enough for the individual to learn the job and performed a SGA. 20 C.F.R. §§ 404.1560(b) and 404.1565. If the individual has the RFC to perform her past work, then a finding of not disabled is made. If the individual is unable to perform any PRW or does not have any PRW, then the analysis proceeds to step five.

The fifth and final step requires the ALJ to determine whether the individual is able to do any other work considering her RFC, age, education, and work experience. 20 C.F.R. § 404.1520(g). If she is able to do other work, then a finding of not disabled is made. Although the individual generally continues to have the burden of proving disability at this step, a limited burden of going forward with the evidence shifts to the Commissioner. The Commissioner is responsible for providing evidence demonstrating that other work exists in significant numbers in the economy that the individual can do. *Yuckert*, 482 U.S. at 141–42.

Here, the ALJ followed the five-step sequential evaluation process set forth in 20 C.F.R. §§ 404.1520 and 416.920. ECF No. 19-1 at 24–34.

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of May 8, 2013. *Id*. at 24.

At step two, the ALJ found that Plaintiff had the following medically determinable "severe" impairments: degenerative disc disease, anxiety disorder, and affective disorder. *Id*. The ALJ found her hypothyroidism to be "non-severe." *Id*. at 24–25.

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id*. at 25.

Before moving to step four, the ALJ also found that Plaintiff had the RFC to perform medium work with the following exceptions: She can sit for six hours in an eight-hour workday; she can occasionally climb ladders, ropes, or scaffolds; she can frequently climb ramps or stairs, stoop, kneel, crouch, or crawl; she can maintain appropriate interpersonal interactions with co-workers and supervisors in a setting not requiring intense social interaction; and she can perform work where contact with the public will be limited. *Id*. at 27.

At step four, the ALJ found that Plaintiff cannot perform any past relevant work. *Id*. at 32.

At step five, the ALJ considered Plaintiff's age, education, work experience, and RFC and found that there are jobs that exist in significant numbers in the national economy that she can perform. *Id*. at 33. Specifically, the ALJ found that Plaintiff can work as an auto detailer, bagger, or store laborer. *Id*. The ALJ then concluded that Plaintiff was not under a disability at any time from May 8, 2013 through December 31, 2018, the date Plaintiff was last insured. *Id*. at 34.

…

…

…

…

…

…

### 3.    Analysis

#### a. Whether the ALJ properly weighed opinion evidence from treating physician Dr. Tsujimoto-Ryzewski

##### i. Dr. Tsujimoto-Ryzewski's opinion

Dr. Rishell Tsujimoto-Ryzewski treated Plaintiff from January 2018 through, at least, April 2019.[3] *See, e.g.,* ECF No. 19-4 at 410; ECF No. 19-1 at 223. On May 3, 2018, Dr. Tsujimoto-Ryzewski completed a Treating Physician Questionnaire. ECF No. 19-4 at 410–12. In the Questionnaire, the treating physician opined that Plaintiff suffered from "Bipolar I Disorder, MRE Depressed[;] Panic Disorder, [and] PTSD" with a "chronic relapsing" prognosis. *Id*. at 410. According to clinical findings, Plaintiff "was dysphoric [and] anxious at the last appointment." *Id*. Dr. Tsujimoto-Ryzewski also identified Plaintiff's symptoms to include "[d]epression, decreased sleep, low energy, anhedonia, fluctuating concentration, panic attacks, nightmares, [and] flashbacks[,]" while noting that these symptoms would "constantly" interfere with the "attention and concentration needed to perform even simple work tasks[.]" *Id*. at 410–11. The doctor also stated that Plaintiff "has had psychiatric symptoms since 2008." *Id*. at 412.

Dr. Tsujimoto-Ryzewski further opined that Plaintiff is "incapable of even 'low stress' jobs[,]" explaining that Plaintiff has "panic attacks, flashbacks[, and] fluctuating mood symptoms[,]" and "will likely have some relapses in the future." *Id*. at 411. She stated that Plaintiff's impairments will likely result in "good" and "bad" days. *Id*. at 412. Finally, she noted that Plaintiff was not a malingerer, she would miss more than four days of work per month, and she "will have a difficult time working." *Id*.

##### ii. The ALJ's decision

The ALJ assigned "little" weight to Dr. Tsujimoto-Ryzewski's opinion because "while Dr. Tsujimoto-Ryzewski had a treating relationship with the claimant, the relationship was short and the proposed limitations were not supported by any referenced evidence." ECF No. 19-1 at 31. According to the ALJ, Dr. Tsujimoto-Ryzewski had a "short" treating relationship with Plaintiff because, at the time that she provided her opinion, the treating physician had seen Plaintiff "on

---

[3] The ALJ's decision is dated January 16, 2019. ECF No. 19-1 at 34.

five occasions." *Id*. Additionally, the ALJ found that the treating physician's "opinion and proposed limitations, such as the assessment that the claimant would miss four days of work per month, were conclusory and not supported by any referenced evidence." *Id*. Finally, the ALJ found that the treating physician's statement regarding Plaintiff's absenteeism, which is that Plaintiff "would 'have a difficult time working[,]' . . . rel[ied] heavily on the claimant's subjective allegations . . . ." *Id*.

### iii. The parties' arguments

Plaintiff moves to remand this matter, arguing that the ALJ did not provide "specific and legitimate" reasons for assigning "little" weight to the opinion of treating psychiatrist Dr. Tsujimoto-Ryzewski, M.D. ECF No. 24 at 9. Plaintiff argues that although an ALJ "is not necessarily bound by the opinions of a treating physician[,]" the ALJ must, nonetheless, provide "specific and legitimate" reasons to discount the treating physician's opinion, and because she failed to do so here, she erred. *Id*. at 8.

Plaintiff argues that the ALJ discounted Dr. Tsujimoto-Ryzewski's opinion only as it relates to potential absenteeism, explaining that the ALJ did not "articulate any specific and legitimate reasons for rejecting" the treating physician's other opinions relating to, for example, Plaintiff's inability to perform low-stress jobs or simple work due to her mental health impairments. *Id*. at 9. With respect to the ALJ discounting Dr. Tsujimoto-Ryzewski's opinion on Plaintiff's four monthly potential absences, Plaintiff argues that this reason also fails to meet the "specific and legitimate" standard because, contrary to the ALJ's finding, the treating physician's opinion relating to absenteeism is supported by the treatment records.

Plaintiff also argues that the ALJ erred in discounting Dr. Tsujimoto-Ryzewski's opinion by limiting her analysis to the treating physician's assessment form while ignoring the doctor's treatment records and objective findings. *Id*. at 9–10. Plaintiff further argues that even if the ALJ were to rely, as she did, exclusively on the assessment form, the treating physician "provided sufficient medical information that supports the assessed limitations" by explaining, for example, how Plaintiff's symptoms (e.g., panic attacks, flashbacks) would cause Plaintiff difficulty with even low-stress jobs. *Id*. at 10.

1      Next, Plaintiff argues that the ALJ erred by discounting Dr. Tsujimoto-Ryzewski's

2   opinion for "rely[ing] heavily on the claimant's subjective allegations." *Id*. Plaintiff notes that the

3   Ninth Circuit has explained that doctors, when treating and assessing mental health impairments,

4   will necessarily rely on a "degree of self-reports" as this is the "nature of psychiatry[.]"

5    *Id*.

6      Finally, Plaintiff argues that the ALJ's decision to discount the treating physician's

7   opinion because of the "short" treating relationship is not "specific and legitimate" because the

8   ALJ assigned "great" weight to the state consulting doctor who only saw Plaintiff once. *Id*. at 11.

9   Plaintiff argues that the ALJ failed to explain the inconsistency in relying on treatment duration to

10  discount Dr. Tsujimoto-Ryzewski's opinion while giving "great" weight to a non-treating

11  physician's opinion that relied on a one-time examination of Plaintiff. *Id*.

12      The Commissioner responds that the standard for reviewing whether an ALJ properly

13  discounted a treating physician's opinion is whether the ALJ gave "good reasons that are

14  supported by substantial evidence." ECF No. 27 at 5. At the same time, in a footnote, the

15  Commissioner concedes that the Ninth Circuit employs a "'clear and convincing reasons'

16  standard when reviewing an ALJ's decisions to discredit an uncontradicted medical source's

17  opinion." *Id*. In the same footnote, the Commissioner notes that although "district courts are

18  bound to follow Circuit precedent[, b]ecause there are contradicted opinions, this standard does

19  not apply." *Id*.

20      The Commissioner next argues that Plaintiff's disagreement "with the ALJ's reasoning

21  [for discounting Dr. Tsujimoto-Ryzewski's opinion] does not amount to reversible error." *Id*. The

22  Commissioner argues that the ALJ did not err by assigning "great" weight to the state consulting

23  doctor who examined Plaintiff only once, while assigning "little" weight to the treating physician

24  because she treated Plaintiff only five times, because it was within the ALJ's discretion to

25  "consider the duration of the treating relationship when considering a medical opinion." *Id*. at 6.

26      Additionally, the Commissioner argues that the ALJ's reason for discounting the treating

27  physician's opinion regarding Plaintiff's four monthly absences was not error. This is so,

28  according to the Commissioner, because the treating physician only provided one example of

"'objective evidence'" in the "check-the-box" assessment form, and the doctor's own progress notes are "devoid of any indication as to why Plaintiff would be absent form work four days a month." *Id*. Accordingly, the Commissioner argues that the ALJ properly discounted the treating physician's opinion that Plaintiff would miss four days of work per month.

Next, the Commissioner argues that the ALJ "validly discounted" Dr. Tsujimoto-Ryzewski's opinion because it relied on Plaintiff's subjective complaints that were not supported by the doctor's progress notes or mental status examinations. *Id*. at 7.

Finally, the Commissioner seems to argue that Plaintiff is incorrect in arguing that "the ALJ was required to incorporate into the RFC and pose in the hypothetical to the VE that Plaintiff would be off-task 20% of the time."[4] *Id*. As the Commissioner argues, the ALJ was under no such obligation to do so because these limitations were "not supported by the evidence." *Id*.

In her reply, Plaintiff notes again that an ALJ is not bound by a treating physician's opinion, but if she does reject the opinion, and the opinion is contradicted, she must provide "specific and legitimate" reasons for doing so. ECF No. 29 at 3–4. Plaintiff further argues that the ALJ's decision to discount Dr. Tsujimoto-Ryzewski's opinion because the doctor saw Plaintiff on five occasions was not "specific and legitimate" because the ALJ "does not explain how the length of the treatment relationship was a disadvantage[,]" especially when the ALJ "simultaneously g[a]v[e] great weight to a consultative examiner who only met with [Plaintiff] only once." *Id*.

Plaintiff also argues in her reply that objective evidence supports Dr. Tsujimoto-Ryzewski's opinion, and "[b]oth the Commissioner and the ALJ ignored these findings from the clinical interview, which are objective factors." *Id*. at 4–5. Yet, Plaintiff also notes again that, in

---

[4] The Commissioner's argument lacks clarity because, in making it, the Commissioner includes an "if" clause without an accompanying "then" clause. ECF No. 27 at 7. Regardless, the Commissioner appears to mischaracterize Plaintiff's argument. As is supported by Plaintiff's Motion for Reversal or Remand (ECF No. 24) and reinforced in her reply (ECF No. 29), Plaintiff did not make such a claim. *See* ECF No. 24 at 8, ECF No. 29 at 6. Rather, as noted in her reply, Plaintiff "pointed to the VE's testimony regarding being off task 20% of the time in an effort to show that the rejection of Dr. Tsujimoto-Ryzewski's opinion was not harmless error." ECF No. 29 at 6.

the context of psychiatry, a doctor can rely on "self-reports" or "subjective reports" to form an opinion. *Id*. at 5.

Additionally, Plaintiff argues that Dr. Tsujimoto-Ryzewski's use of a "check-the-box" form "is not an automatic disqualifier" because the doctor's opinions are explained on the form and also supported by objective evidence from the doctor's treatment notes. *Id*.

Finally, Plaintiff notes that the Commissioner is non-responsive to her argument that "the ALJ's criticism regarding Dr. Tsujimoto-Ryzewski's statement that [Plaintiff] 'will have a difficult time working' only applied to the [sic] Dr. Tsujimoto-Ryzewski's opinion regarding absenteeism" and not the other doctor's opinions on Plaintiff's "inability to perform even low stress jobs, and constant interference in the ability to perform even simple work." *Id*.

### iv. Whether the ALJ provided "specific and legitimate" reasons for discounting the opinion of treating physician Dr. Tsujimoto -Ryzewski

The Ninth Circuit classifies medical opinions into three hierarchical categories: (1) treating physicians (i.e., those who treat the plaintiff), (2) examining physicians (i.e., those who examine but do not treat the plaintiff), and (3) non-examining physicians (i.e., those who do not treat or examine the plaintiff).[5] *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). "Because treating physicians are employed to cure and thus have a greater opportunity to know and observe the patient as an individual, their opinions are given greater weight than the opinions of other physicians." *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996); *see also Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2008) ("Generally, a treating physician's opinion

---

[5] The SSA changed the framework for how an ALJ must evaluate medical opinion evidence for claims filed on or after March 27, 2017. *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 2017 WL 168819, 82 Fed. Reg. 5844-01 (Jan. 18, 2017); 20 C.F.R. §§ 404.1520c, 416.920c. The new regulations provide that the ALJ will no longer "give any specific evidentiary weight . . . to any medical opinion(s) . . . ." *Revisions to Rules*, 2017 WL 168819, 82 Fed. Reg. 5844, at 5867-68; *see* 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Here, Plaintiff applied for Title II benefits on September 15, 2015. ECF No. 19-1 at 404–05. This would, therefore, make the old regulations discussed above applicable to Plaintiff's claims. 20 C.F.R. § 404.1520c ("For claims filed before March 27, 2017, the rules in § 404.1527 apply.").

carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's.").

An ALJ may reject a treating physician's uncontradicted opinion by providing "clear and convincing" reasons supported by substantial evidence. *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017). If, however, a treating physician's opinion is contradicted, the ALJ may only reject it with "specific and legitimate" reasons supported by substantial evidence in the record. *Orn v. Astrue*, 495 F.3d 625, 628 (9th Cir. 2007). This means that the ALJ "'must do more than offer h[er] conclusions; [s]he must set forth h[er] own interpretations and explain why they, rather, than the doctor['s], are correct.'" *Belanger v. Berryhill*, 685 Fed. App'x 596, 598 (9th Cir. 2017). This is a necessary step so that the reviewing court does not speculate as to the basis of the findings when determining whether substantial evidence supports the ALJ's decision.

Here, although the Commissioner appears to suggest otherwise, the "specific and legitimate" standard applies because Dr. Tsujimoto-Ryzewski, a treating physician, provided an opinion that was contradicted by a state examining doctor. *Orn*, 495 F.3d at 628.

As discussed below, the ALJ erred because her proffered reasons for discounting Dr. Tsujimoto-Ryzewski's opinion were not "specific and legitimate." The Court will discuss each cited reason in turn.

First, the ALJ stated that she gave Dr. Tsujimoto-Ryzewski's opinion "little" weight because Dr. Tsujimoto-Ryzewski only saw Plaintiff on five occasions. ECF No. 19-1 at 25. But the ALJ gave "great weight" to the state consulting doctor who examined Plaintiff only once. ECF No. 19-1 at 31. The ALJ did not explain this inconsistency.[6] Accordingly, the Court cannot find that the ALJ's decision to discount Dr. Tsujimoto-Ryzewski's opinion based on the number of times she treated Plaintiff is legitimate. *See Orn*, 495 F.3d at 631; *see also* 20 C.F.R.

---

[6] In the ALJ's discussion regarding the state consulting doctor's opinion, the ALJ acknowledged that the state doctor lacked a treating relationship with Plaintiff but the doctor's assessments "were consistent with the clinical interview, behavioral observations, and results of the mental status exam." ECF No. 19-1 at 10. But this discussion fails to explain the inconsistency between assigning "great" weight to a one-time examination and "little" weight to five examinations, as both the state and treating doctors relied on clinical interviews, behavioral observations, and mental status examinations (MSEs), though the latter conducted at least four more clinical interviews, observations, and MSEs than the former.

§ 404.1527 ("Generally, we give more weight to medical opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations."). By not explaining why she used the length of treatment as a factor to discount the treating physician's opinion but not the state agency consulting doctor's opinion, the ALJ erred. *See Garrison v. Colvin*, 759 F.3d 995, 1012–13 (9th Cir. 2014) ("[A]n ALJ errs when [s]he rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for h[er] conclusion.").

The ALJ's reliance on the "short" treatment relationship also mischaracterizes the record. This is so because Dr. Tsujimoto-Ryzewski continued to treat Plaintiff through at least mid-2019,[7] and her treatment notes continued to reflect the same diagnoses and findings that she noted in the questionnaire she completed on May 3, 2018. *Compare, e.g.,* ECF No. 19-4 at 410 (diagnosed Plaintiff with Bipolar I Depression, Panic Disorder, and PTSD; found that Plaintiff's symptoms included panic attacks, fluctuating concentration, flashbacks, low energy; and noted that Plaintiff's affect is dysphoric and anxious)[8] *with* ECF No. 19-1 at 237-38 (diagnosed Plaintiff with Bipolar I Disorder - Most Recent Episode Depressed, Panic Disorder, and PTSD; found that Plaintiff's symptoms included flashbacks, panic attacks, decreased appetite and energy; and noted that Plaintiff "appears physically anxious and bounces her legs during the appointment" and has a dysphoric and anxious affect).[9]

---

[7] The administrative record reflects that Dr. Tsujimoto-Ryzewski submitted her initial opinion on Plaintiff's alleged disability on May 3, 2018, but continued to treat Plaintiff through at least April 2019. ECF No. 19-4 at 410–12; ECF No. 19-1 at 223. The ALJ submitted her opinion on January 16, 2019. ECF No. 19-1 at 34.

[8] These findings stem from Dr. Tsujimoto-Ryzewski's questionnaire that she submitted on May 3, 2018. This questionnaire is the only document that the ALJ cites in discounting the treating doctor's opinion. ECF No. 19-1 at 31.

[9] This progress note is dated October 3, 2018, several months after Dr. Tsujimoto-Ryzewski's questionnaire and several months before the ALJ would publish her decision. ECF No. 19-1 at 237.

Second, the ALJ stated that she gave Dr. Tsujimoto-Ryzewski's opinion "little" weight because "the opinion and proposed limitations, such as the assessment that the claimant would miss four days of work per month, were conclusory and not supported by any referenced evidence." ECF No. 19-1 at 31. This, however, is itself a conclusory statement that fails to meet the ALJ's burden of "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating h[er] interpretation thereof, and making findings." *Trevizo*, 871 F.3d at 675 (internal citations omitted); *see also Embrey v. Bowen*, 849 F.2d 418, 421–22 (9th Cir. 1988) (requiring the ALJ to identify the evidence supporting the alleged conflict to permit the court to meaningfully review the ALJ's finding); *Ogin v. Colvin*, 608 Fed. App'x 519, 520 (9th Cir. 2015) (holding that the ALJ did not offer "specific and legitimate" reasons to discount physician's opinion because the ALJ "never specified which findings in which treating records she was relying on"). Here, it is unclear to this Court what the ALJ means by "referenced evidence" or which "referenced evidence" she relied on to make her findings. Is the "referenced evidence" the evidence cited by Dr. Tsujimoto-Ryzewski in the questionnaire or treatment notes, Dr. Tsujimoto-Ryzewski's (or another medical provider's) objective findings (e.g., mental status examinations), Plaintiff's subjective complaints to Dr. Tsujimoto-Ryzewski (or another medical provider), or something else?

In short, the Court does not know and cannot infer what aspects of the "referenced evidence" do not substantiate Dr. Tsujimoto-Ryzewski's opinion or why the doctor's opinion is conclusory. The Commissioner seeks to fill in these gaps. *See, e.g.,* ECF No. 27 at 6. But, as the Commissioner knows, the Court is bound to affirm an ALJ's decision based only on a ground the ALJ invoked. *See Connett v. Barnhart,* 340 F.3d 871, 874 (9th Cir. 2003) ("We are constrained to review the reasons the ALJ asserts."); *Orn*, 495 F.3d at 630. Therefore, because the ALJ failed to specify how Dr. Tsujimoto-Ryzewski's opinion was unsupported by the "referenced evidence[,]" or how the opinion relating to Plaintiff's absenteeism was conclusory, the Court cannot find that this is a specific and legitimate reason for discounting the doctor's opinion. *See Jarvis v. Berryhill*, 722 Fed. App'x 616, 618 (9th Cir. 2018) ("An ALJ errs when [s]he rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without

explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion.").

Third, the ALJ stated that she gave Dr. Tsujimoto-Ryzewski's opinion "little" weight because the doctor relied heavily on Plaintiff's subjective complaints. But the ALJ failed to explain how Dr. Tsujimoto-Ryzewski's opinion relied "heavily" on Plaintiff's subjective complaints. For example, the ALJ did not provide any support for how the doctor's opinion relied on the subjective complaints as opposed to objective findings (e.g., clinical interviews, mental status examinations, etc.). Additionally, in the questionnaire that Dr. Tsujimoto-Ryzewski completed, in addition to discussing self-reports, the doctor also discussed her observations, diagnoses, and prescriptions. Accordingly, it is unclear to the Court whether Dr. Tsujimoto-Ryzewski's opinion was heavily based on subjective complaints. And without further explanation, the ALJ's decision to discount it on this basis is not specific and legitimate. *See Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014) (finding the ALJ erred by discounting a medical opinion on the grounds that it was too heavily based on plaintiff's self-reports, when the opinion discussed the provider's observations, diagnoses, and prescriptions, in addition to self-reports).

Because the ALJ did not provide specific and legitimate reasons for discounting Dr. Tsujimoto-Ryzewski's opinion, the ALJ erred. *Nguyen v. Chater*, 100 F.3d 1462, 1464 (9th Cir. 1996) ("Where an ALJ does not explicitly reject a medical opinion or set forth specific, legitimate reasons for crediting one medical opinion over another, [s]he errs."); *see also Lewin*, 654 F.3d at 634 (The ALJ's findings "should be as comprehensive and analytical as feasible, and where appropriate, should include a statement of subordinate factual foundations on which the ultimate factual conclusions are based.").

The next step is to determine whether the ALJ's error is harmless. An ALJ's error is harmless only if it is found to be "inconsequential to the ultimate nondisability determination" and if the court "can confidently conclude that no reasonable ALJ, when [not making the same error] could have reached a different disability determination." *Stout*, 454 F.3d at 1055–1056; *see*

*Garrison*, 759 F.3d at 1012. Here, another ALJ, crediting Dr. Tsujimoto-Ryzewski's opinion, could have reached a different disability determination. Accordingly, this error was not harmless.

> **b.** **Whether the ALJ properly weighed opinion evidence of licensed social worker Ms. Kneip**

> **i. Ms. Kneip's opinion**

Brooklyn Kneip, LCSW is a licensed social worker who treated Plaintiff between May 31, 2017 through, at least, October 18, 2018, once a week for 45 minutes. ECF No. 19-4 at 394, 444, 451. On April 18, 2018, Ms. Kneip completed a Mental Residual Functional Capacity Questionnaire. *Id*. at 444-48. In this questionnaire, she opined that Plaintiff suffers from general anxiety disorder, bipolar disorder, and PTSD, and is receiving cognitive behavioral therapy "with various responses." *Id*. at 444. She listed Plaintiff's prescribed medications and explained their relevant side effects for work purposes (i.e., sleep disturbance, appetite change, lethargy, and dizziness). *Id*. Additionally, Ms. Kneip noted that her clinical findings based on mental status examinations indicated that Plaintiff "reports frequent agitation, mood swings, panic attacks." *Id*. Later in the questionnaire, Ms. Kneip opined that Plaintiff has "severe mood swings, poor impulse control, and is verbally aggressive. She has poor concentration, panic attacks, and [is] forgetful. She is often lethargic due to medications." *Id*. at 446. Ms. Kneip further opined that Plaintiff is not a malingerer, does not engage in alcohol or substance abuse, and would miss more than four days of work per month. *Id*. at 448.

Ms. Kneip also checked boxes expressing the following opinions: (1) Plaintiff's signs and symptoms include anhedonia or pervasive loss of interest in almost all activities; appetite disturbance with weight change; decreased energy; blunt, flat or inappropriate affect; feelings of guilt or worthlessness; impairment in impulse control; generalized persistent anxiety; mood disturbance; difficulty thinking or concentrating; recurrent and intrusive recollections of a traumatic experience, which are a source of marked distress; pathological dependence, passivity or aggressivity; persistent disturbances of mood or affect; paranoid thinking or inappropriate suspiciousness; emotional withdrawal or isolation; intense and unstable interpersonal relationships and impulsive and damaging behavior; disorientation to time and place;

hallucinations or delusions; emotional lability; flight of ideas; vigilance and scanning; easy distractibility; memory impairment – short, intermediate or long term; sleep disturbance; and recurrent severe panic attacks manifested by a sudden unpredictable onset of intense apprehension, fear, terror and sense of impending doom occurring on the average of at least once a week; (2) Plaintiff has the "limited but satisfactory" ability to understand and remember very short and simple instructions, carry out very short and simple instructions, ask simple questions or request assistance, accept instructions and respond appropriately to criticism from supervisors, respond appropriately to changes in a routine work setting, and be aware of normal hazards and take appropriate precautions; (3) Plaintiff is "seriously limited, but not precluded" from maintaining regular attendance and being punctual within customary, usually strict tolerances; working in coordination with or proximity to others without being unduly distracted; making simple work-related decisions; completing a normal workday and workweek without interruptions from psychologically based symptoms;[10] performing at a consistent pace without an unreasonable number and length of rest periods; getting along with co-workers or peers without unduly distracting them or exhibiting behavior extremes; and dealing with normal work stress; (4) Plaintiff is "unable to meet competitive standards" with respect to maintaining attention for a two-hour segment; sustaining an ordinary routine without special supervision; and completing a normal workday and workweek without interruptions from psychologically based symptoms; (5) Plaintiff has a "limited but satisfactory" ability to understand and remember detailed instructions, carry out detailed instructions, and set realistic goals or make plans independently of others; (6) Plaintiff is "seriously limited, but not precluded" from dealing with stress of semiskilled or skilled work due to her "history of anxiety and panic attacks[;]" (7) Plaintiff has a "limited but satisfactory" ability to interact appropriately with the general public, maintain socially appropriate behavior; adhere to basic standards of neatness and cleanliness, and travel in

---

[10] Ms. Kneip marked two seemingly conflicting boxes ("seriously limited, but not precluded" and "unable to meet competitive standards") with respect to Plaintiff's ability to complete a normal workday and workweek without interruptions from psychologically based symptoms." ECF 19-4 at 446. It is unclear to the Court whether this is a scrivener's error.

1    unfamiliar place; and (8) Plaintiff has "no useful ability to function" with respect to using public

2    transportation.  *Id*. at 445–47.

3    ### ii. The ALJ's decision

4         The ALJ assigned "little" weight to Ms. Kneip's opinion. ECF No. 19-1 at 10. The ALJ

5    reasoned that the social worker's "proposed assessments regarding the claimant's mental abilities

6    and aptitudes needed to do unskilled work relied solely on the claimant's subjective allegations,

7    such as allegations regarding the claimant's panic attacks, forgetfulness, and lethargy due to

8    medications." ECF No. 19-1 at 31. The ALJ also found that Ms. Kneip's opinion that "claimant

9    had no useful ability to function with regard to the claimant's ability to use public transportation .

10   . . provided no explanation for the conclusion reached." *Id*. The ALJ continued, noting that the

11   "conclusory assessment appeared inconsistent with the claimant's reported ability to shop in

12   stores for food one to three days per week, her reported ability to take vacations, her ability to

13   attend church, and her ability to attend family functions (Exhibit 4E/4-5)." *Id*. The ALJ then

14   concluded, "While the claimant's diagnosed mental impairments as well as her history of mental

15   health treatment supported the finding that she had limitations in social functioning there was no

16   significant evidence, provided by Ms. Kneip or in the record, to support a finding that she was

17   more limited than assessed in the residual functional capacity." *Id*. at 31–32.

18   ### iii. The parties' arguments

19        Plaintiff argues that the ALJ "failed to properly evaluate Ms. Kneip's opinion." ECF No.

20   24 at 15. Plaintiff argues that although the ALJ must provide "germane" reasons to reject Ms.

21   Kneip's opinion, the ALJ failed to do so by ignoring objective evidence (such as mental status

22   examination findings and clinical interview responses). *Id*. at 14. Plaintiff also argues that the

23   ALJ erred in her other reasons for discounting Ms. Kneip's opinion, including that Ms. Kneip did

24   not explain why Plaintiff had no useful ability to use public transportation, and this restriction "is

25   inconsistent with [Plaintiff's] ability to shop in stores for food one to three days per week; ability

26   to take vacations; ability to attend church; and ability to attend family functions." *Id*. Plaintiff

27   explains that "[e]ven if Ms. Kneip's opinion regarding no useful ability to use public

28

transportation or social interaction is unsupported, this articulated reason does not address the other functional limitations that Ms. Kneip assessed . . . ." *Id*. at 14–15.

Plaintiff further argues that the ALJ erred by mischaracterizing the evidence relating to Plaintiff's activities of daily living. *Id*. at 15. Plaintiff explains that the ALJ relied on a function report that Plaintiff completed to find that she could attend church, go to store, and attend family functions, "[b]ut in doing so, the ALJ mischaracterized what [Plaintiff] had stated" by ignoring Plaintiff's qualifications and explanations (e.g., her ability to engage in activities like grocery shopping is "subject to her anxiety and panic attacks"). *Id*. Finally, Plaintiff argues that the ALJ's finding (that her ability to go on vacation is inconsistent with Ms. Kneip's opinion that Plaintiff is unable to use public transportation) was not developed or contextualized and, instead, relied on "one notation" in the record where there was "no detail as to what type of vacation this was." *Id*.

The Commissioner responds that the ALJ provided "valid" reasons for discounting Ms. Kneip's opinion and notes that she is a "non-acceptable medical source" because she is a licensed social worker. ECF No. 27 at 8. The Commissioner recounts the reasons that the ALJ provided for discounting Ms. Kneip's opinion but then delves into the state consulting examiner's findings, concluding that the latter's "assessment is more consistent with the record as a whole." *Id* at 10–11. The Commissioner also argues that the mental status examination findings do not establish that Plaintiff "was incapable of performing tasks or maintaining attention, or incapable of limited interpersonal interaction, or the inability to use public transportation, as Ms. Kneip indicated" and notes that the ALJ considered these findings, writing that the "ALJ noted the anxious and depressed mood/affect during these sessions, but also noted that her thought processes were routinely assessed and suggested as organized and future oriented and she did not have suicidal ideations or auditory or visual hallucinations, and was fully oriented[.]" *Id*. at 11 (citing to the ALJ decision and Ms. Kneip's progress notes).

Plaintiff replies that the Court "should reject" the Commissioner's argument that "Ms. Kneip's opinions 'drastically' differ than the opinions of Dr. Holland, the consultative psychologist." ECF No. 29 at 7. Plaintiff also argues that the Social Security Regulations allow the ALJ to give greater weight to an "other" medical source's opinion than to a valid medical

1    source's opinion. *Id*. Additionally, Plaintiff argues that the Commissioner's discussion of

2    Plaintiff's mental status examination findings do "not address the fact that the ALJ impermissibly

3    ignored a vast array of the objective evidence as recorded by Ms. Kneip." *Id*. Further, Plaintiff

4    replies that Plaintiff's activities of daily living, "with nothing more[,]" do not invalidate her

5    disability status as "disabled individuals go to church; go to stores; and spend time with family."

6    *Id*. at 7–8.

### iv. Whether the ALJ provided "germane" reasons for discounting the opinion of licensed social worker Ms. Kneip

7

8        The ALJ must evaluate every medical opinion received according to a list of factors set

9    forth by the Social Security Administration. 20 C.F.R. § 416.927(c). The opinion of an acceptable

10   medical source, such as a physician or psychologist, is given more weight than that of "other

11   source[s]." *Id*. § 404.1527 (2012); *Gomez v. Chater*, 74 F.3d 967, 970-71 (9th Cir. 1996). "Only

12   physicians and certain other qualified specialists are considered '[a]cceptable medical sources.'"

13   *Ghanim*, 763 F.3d at 1161 (alteration in original); *see* 20 C.F.R. §§ 404.1513, 416.913 (2013).

14       "Other sources" include teachers, social workers, spouses, and other non-medical sources.

15   20 C.F.R. § 404.1513(d).[11] Non-medical testimony can never establish a diagnosis or disability

16   absent corroborating competent medical evidence. *Nguyen*, 100 F.3d at 1467. But the ALJ is still

17   required to "consider observations by non-medical sources as to how an impairment affects a

18   claimant's ability to work." *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987). And an ALJ

19   is obligated to give reasons germane to "other source" testimony before discounting it. *Molina v.*

20   *Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012); *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).

21       As Ms. Kneip is a social worker, she is an "other source." As such, the ALJ was required

22   to give germane reasons to reject her opinion.[12]

23

24       [11] The regulation that defines acceptable medical sources is found at 20 C.F.R. §§ 404.1502,

25   416.902 for claims filed after March 27, 2017, but the Court applies the regulation in effect at the time
     Plaintiff's claim was filed.

26       [12] The Commissioner is right in that Ms. Kneip is not an acceptable medical source, but seems to
     avoid clearly noting that, as a social worker, Ms. Kneip qualifies as an "other" source whose opinion must

27   be considered and only rejected based on germane reasons.

28

1    Here, the ALJ provided three reasons for discounting Ms. Kneip's opinion. The Court will

2    discuss each reason in turn.

3    First, the ALJ discounted Ms. Kneip's opinion because her "proposed assessments

4    regarding the claimant's mental abilities and aptitudes needed to do unskilled work relied solely

5    on the claimant's subjective allegations, such as allegations regarding the claimant's panic

6    attacks, forgetfulness, and lethargy due to medications." ECF No. 19-1 at 31. While this could be

7    a germane reason, it is not because it is not supported by substantial evidence. First, Ms. Kneip

8    did not rely exclusively on Plaintiff's self-reports to make her findings. In the same questionnaire

9    the ALJ cited, Ms. Kneip noted that some of her findings were based on "*clinical findings*

10   *including results of mental status examinations*[.]" ECF No. 19-4 at 444 (emphasis in original).

11   Additionally, Ms. Kneip's progress notes indicated that objective findings were obtained at

12   multiple sessions. *See, e.g.,* ECF No. 19-4 at 365 (December 20, 2017 session), 357-59 (March

13   28, 2018; February 28, 2018; and February 14, 2018 sessions), 361-62 (February 7, 2018 and

14   January 23, 2018 sessions), 432 (June 6, 2018 session), 437-41 (May 16, 2018; April 25, 2018;

15   May 2, 2018; April 18, 2018; and April 11, 2018 sessions), 455-58 (September 19, 2018;

16   September 12, 2018; September 5, 2018; and August 29, 2018 sessions).

17   The Commissioner argues that the ALJ addressed these mental status examination (MSE)

18   findings in discounting Ms. Kneip's opinion, writing that the "ALJ noted the anxious and

19   depressed mood/affect during these sessions, but also noted that her thought processes were

20   routinely assessed and suggested as organized and future oriented and she did not have suicidal

21   ideations or auditory or visual hallucinations, and was fully oriented[.]" ECF No. 27 at 11 (citing

22   to the ALJ decision and Ms. Kneip's progress notes). But the Commissioner mischaracterizes the

23   ALJ's decision, as the ALJ did not cite to Ms. Kneip's progress notes, MSE findings, or clinical

24   findings in discounting her opinion. Rather, the ALJ unequivocally discounted Ms. Kneip's

25   opinion, finding her "proposed assessments regarding the claimant's mental abilities and

26   aptitudes need[ed] to do unskilled work relied solely on the claimant's subjective allegations,

27   such as allegations regarding the claimant's panic attacks, forgetfulness, and lethargy due to

28   medications." ECF No. 19-1 at 31. As the ALJ did not cite to the MSE findings in discounting

Ms. Kneip's opinion,[13] the Commissioner cannot supplement the ALJ's opinion. As noted above, the Court is bound to affirm an ALJ's decision based only on a ground that the ALJ invoked. *See Connett,* 340 F.3d at 874 ("We are constrained to review the reasons the ALJ asserts."); *Orn*, 495 F.3d at 630.

Additionally, diagnoses of mental health impairments "will always depend in part on the patient's self-report, as well as on the clinician's observations of the patient. But such is the nature of psychiatry." *Buck*, 869 F.3d at 1049 (internal citation omitted). Accordingly, "the rule allowing an ALJ to reject opinions based on self-reports does not apply in the same manner to opinions regarding mental illness." *Id*. As such, the Court finds that the first reason the ALJ provided for discounting Ms. Kneip's opinion was not supported by substantial evidence and thus not a germane reason.

Second, the ALJ assigned "little" weight to Ms. Kneip's opinion because her assessment relating to Plaintiff having "no useful ability . . . to use public transportation . . . provided no explanation for the conclusion reached." ECF No. 19-1 at 31. Citing an Adult Function Report that Plaintiff completed on October 20, 2015—nearly two years before beginning treatment with Ms. Kneip—the ALJ stated that this "conclusory assessment appeared inconsistent with the claimant's reported ability to shop in stores for food one to three days per week, her reported ability to take vacations, her ability to attend church, and her ability to attend family functions (Exhibit 4E/4-5)."[14] *Id*. It is unclear to the Court how Plaintiff's alleged inability to use public transportation is inconsistent with the Adult Function Report that Plaintiff completed, particularly

---

[13] Earlier in her decision, the ALJ partially summarized records from Desert Behavioral Health and Red Rock Psychological Health, where Ms. Kneip worked at the time she treated Plaintiff. ECF No. 19-1 at 30. However, the ALJ did not connect her discussion on discounting Ms. Kneip's opinion to these records. *See id.* at 31–32. In fact, neither of the two exhibits that the ALJ cited in discounting Ms. Kneip's opinion match those cited in the partial records summary.

[14] Notably, the ALJ mischaracterized the reported abilities noted in Plaintiff's Adult Function Report by failing to note that Plaintiff qualified her activities of daily living (e.g., sometimes she attempts to grocery shop but is unable to because she becomes anxious or suffers a panic attack). ECF No. 19-1 at 437. Further, the ALJ mischaracterized the report by attributing Plaintiff's alleged ability to go on "vacation*s*" to this report. ECF No. 19-1 at 31 (emphasis added). There is a singular reference to a singular vacation in Ms. Kneip's progress note from September 28, 2017. ECF No. 19-2 at 288 (Plaintiff "went on vacation").

because, in this report, Plaintiff checked the boxes for being able to walk, drive a car, and ride in a car, but did not check the box indicating that she can use public transportation. ECF No. 19-1 at 437. Additionally, in the same report, Plaintiff wrote that her boyfriend drives her "most of time" because she does not know when her panic attacks will be triggered. *Id*. at 435. Further, it is unclear how Plaintiff's ability to go grocery shopping, attend church, take vacations, or attend family functions is inconsistent with her alleged inability to use public transportation. Additionally, it is unclear how the alleged inconsistency between Plaintiff's inability to use public transportation and her ability to go grocery shopping, attend church, and attend family functions is a germane reason for discounting Ms. Kneip's "proposed assessments regarding the claimant's mental abilities and aptitudes needed to do unskilled work[.]" ECF No. 19-1 at 31.

Third, the ALJ discounted Ms. Kneip's opinion because "there was no significant evidence, provided by Ms. Kneip or in the record, to support a finding that she was more limited than assessed in the residual functional capacity." *Id*. at 32. Here, the ALJ failed to identify *what* elements of Ms. Kneip's findings and opinions in the questionnaire, progress notes, or the record "do not support a finding that she was more limited than assessed in the residual functional capacity." The ALJ also failed to explain *how* Ms. Kneip's findings and opinions or the record "do not support a finding that she was more limited than assessed in the residual functional capacity." As noted previously, an ALJ must do more than state conclusions. Instead, the ALJ must set out a detailed summary of the evidence at issue, including any conflicts with other evidence, and explain why her interpretation of the evidence, rather than the clinician's, is correct, and make relevant findings. *Morgan*, 169 F.3d at 600-01; *accord Trevizo*, 871 F.3d at 676–77 (citation omitted). Because the ALJ failed to do more than state conclusions, she erred.

The next question for the Court is whether this error is harmless. An error is not harmless unless the reviewing court "can confidently conclude that no ALJ, when fully crediting the [evidence], could have reached a different disability determination." *Stout*, 454 F.3d at 1056. Here, the Court is not confident that no ALJ could have reached a different disability determination had Ms. Kneip's opinions been credited.

### c. Whether the Court should award benefits or remand for further proceedings

#### i. The parties' arguments

Plaintiff moves the Court to credit the opinions of Dr. Tsujimoto-Ryzewski and Ms. Kneip as a matter of law, find Plaintiff disabled, and order the agency to award benefits or, in the alternative, remand for further proceedings. ECF No. 24 at 12–13, 15. Plaintiff's argument goes like this: The ALJ failed to provide "specific and legitimate" and "germane" reasons for discounting Dr. Tsujimoto-Ryzewski and Ms. Kneip's opinions, respectively. Dr. Tsujimoto-Ryzewski and Ms. Kneip opined that Plaintiff would miss four days of work per month. And the vocational expert provided testimony that makes it clear that had this opinion been credited as true, a disability determination would have been warranted. Further, because there are no outstanding issues that must be resolved before a disability determination can be made, the Court "should exercise its discretion to credit Dr. Tsujimoto-Ryzewski's opinion as true, and award benefits." *Id*. at 12–13.

The Commissioner first notes that they disagree with the Ninth Circuit's credit-as-true rule. The Commissioner next argues that the Court may not award benefits because there are conflicting opinions that must be reconciled. ECF No. 27 at 12. These opinions include Plaintiff's "own admissions[,]" Ms. Kneip's opinion, Dr. Tsujimoto-Ryzewski's opinion, state reviewing doctors' opinions, and examining doctor Dr. Holland's opinion. *Id*. The Commissioner further argues that if additional restrictions are added to Plaintiff's RFC, "additional VE testimony would be required to determine if other jobs existed in the national economy." *Id*. at 12–13.

Plaintiff replies that the Court should exercise its discretion to credit the opinions of both Ms. Kneip and Dr. Tsujimoto-Ryzewski as true and award benefits or, in the alternative, remand for further proceedings. ECF No. 29 at 6, 8.

#### ii. Whether the Court should award benefits or remand for further proceedings

The Ninth Circuit has established a three-part credit-as-true standard to determine whether a case should be remanded for an award of benefits. The credit-as-true test asks if (1) the record has been fully developed and further administrative proceedings would serve no useful purpose;

(2) the ALJ failed to provide legally sufficient reasons for rejecting claimant testimony or medical opinion evidence; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand. *Garrison*, 759 F.3d at 1020. Although the Ninth Circuit has indicated that "it would be an abuse of discretion for a district court not to remand for an award for benefits when all of these conditions are met[,]" the Circuit has also "cautioned that the credit-as-true rule may not be dispositive of the remand question in all cases" and the rule requires "flexibility." *Id*. This flexibility emerges when a court concludes that a plaintiff "is otherwise entitled to an immediate award of benefits under the credit-as-true analysis[,]" but "the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." *Id*. at 1021.

Here, Plaintiff does not meet the credit-as-true standard. The first prong of the standard asks whether the record has been fully developed and further administrative proceedings would serve no useful purpose. *Garrison*, 759 F.3d at 1020. In this case, further proceedings would serve a "useful purpose[,]" because there were medical records submitted by Dr. Tsujimoto-Ryzewski a few months after the ALJ's decision, which the Court believes that the ALJ should have an opportunity to review.[15] *See* ECF No. 19-1 at 254–59. These records are significant in several ways. They establish that the treating relationship between Plaintiff and Dr. Tsujimoto-Ryzewski extended beyond the five sessions that concerned the ALJ. Additionally, they reinforce the treating physician's opinion that Plaintiff would miss more than four days of work per month,

---

[15] Dr. Tsujimoto-Ryzewski completed a Mental Residual Functional Capacity Questionnaire on April 23, 2019, about three months following the ALJ's decision. ECF No. 19-1 at 254–59. In this Questionnaire, the treating physician opined that Plaintiff would miss more than four days of work per month. In explaining why Plaintiff would have difficulty working at a regular job on a sustained basis, Dr. Tsujimoto-Ryzewski noted that Plaintiff has "Bipolar I Disorder with episodes of depression [and] mania. She has irritability on a regular basis. She had suicidal ideation in the past [and] a past psychiatric hospitalization. She has decreased concentration [and] panic attacks. She also has PTSD with nightmares [and] flashbacks." *Id*. at 255. Dr. Tsujimoto-Ryzewski also checked boxes indicating that Plaintiff has "marked" limitations in the following areas: understand, remember, and carry out simple tasks and instructions; understand, remember, and carry out detailed tasks and instructions; maintain regular attendance and be punctual within customary, usually strict tolerances; maintain attention for two-hour segment; complete a normal workday and workweek without interruptions from psychologically based symptoms; interact appropriately with the general public; interact with co-workers; and interact with supervisors. *Id*. at 254.

which is consistent with Ms. Kneip's opinion. Accordingly, the Court will remand in lieu of awarding benefits. *Id*. at 1020 (noting that administrative proceedings are generally useful where the record "has [not] been fully developed"); *see also I.N.S. v. Ventura,* 537 U.S. 12, 18 (2002) (noting that the "presentation of further evidence . . . may well prove enlightening" considering the passage of time).

**III.   CONCLUSION AND ORDER**

Accordingly, IT IS HEREBY ORDERED that Plaintiff's motion to remand (ECF No. 24) is GRANTED. The case is remanded for further proceedings consistent with this Order.

IT IS FURTHER ORDERED that the Commissioner's cross-motion to affirm and response to Plaintiff's motion to remand (ECF Nos. 27, 28) is DENIED.

DATED: May 7, 2021

_____
BRENDA WEKSLER
UNITED STATES MAGISTRATE JUDGE